836

HARP *v.* McGEHEE, administrator.

No. 10346.   November 16, 1934.   Rehearing denied December 14, 1934.

*James R. Davis* and *R. C. Johnson,* for plaintiff.

*W. M. Dallas,* for defendant.

Russell, C. J.   On March 2, 1934, J. N. Harp filed a petition against J. H. McGehee Jr., as administrator of the estate of W. J. Waller, praying that all the property of the defendant's intestate be decreed to belong to petitioner under the terms of an alleged agreement made between him and W. J. Waller during the lifetime of Waller.   Petitioner alleged that on July 1, 1912, when Waller was sick, he agreed with the petitioner that if petitioner would "quit his business and stay with him, the said W. J. Waller, care for him during his sickness, wait on him, nurse him, and attend to his business affairs until he, the said W. J. Waller, died, that he would make a will and will to the said J. N. Harp all of his property, both real and personal, of which he died seized and possessed, to take effect after the death of his sister, Mrs. M. J. Green, stating that he wanted his said sister to have all his property during her life, and that under his said will he would give all said property to

petitioner, to take effect after the death of Mrs. M. J. Green;" that petitioner, on July 1, 1912, began performing his part of said agreement, and stayed with W. J. Waller, and performed every part of the agreement until the death of Waller on August 12, 1912; that Waller died intestate, failing to make the will as agreed to in favor of petitioner; that Mrs. Green took possession of all the property left by Waller and used it and received the rents and profits until her death on June 15, 1932; that the defendant has applied to the court of ordinary for leave to sell all the property of his intestate, for the purpose of paying debts and distribution; that there are no debts; that none of the property of the estate has been disposed of, and the administrator can carry out said agreement; that the estate consists of $102 in cash, 525 acres of land, a house and 4 acres of land in Zebulon, and a vacant lot.

The defendant demurred on the ground, among others, that the plaintiff's cause of action, if any he had, accrued on the death of Waller in 1912, and is now barred by the statute of limitations. The plaintiff offered an amendment alleging that he was a nephew of Waller, who was unmarried and living with his sister, Mrs. Green, who at that time was an old woman; that Waller was sick, and desired plaintiff to move to Zebulon and care for him and attend to his business until he died; that he prevailed on plaintiff, who was living in Arkansas and doing well in business, to come to Zebulon, telling plaintiff he would give him all his property after the death of Mrs. Green if he would live with Waller and help care for him during his last illness, and would "help Mrs. M. J. Green during her life, with the property he was leaving;" that Mrs. Green insisted on plaintiff's accepting said offer; that after the death of Waller the plaintiff carried out his agreement to stay and assist Mrs. Green until her death; that after Waller's death the plaintiff learned he had not made a will as agreed, and plaintiff then told Mrs. Green and his mother, Mrs. E. E. Harp (who but for the agreement made with plaintiff would have been the sole heirs at law of the deceased) that he intended seeing a lawyer as to the necessity of taking some action in order to be sure the property of said estate would be his after the death of Mrs. Green; that Mrs. Green stated this would not be necessary, and that plaintiff's interest would be respected and the property kept intact and upon her death would go to him; that Mrs. Harp also told him that she did not

claim any interest in said estate; that, relying on said promises of Mrs. Green and Mrs. Harp, plaintiff remained with Mrs. Green until her death; that upon the death of Mrs. Green the plaintiff took possession of all the property of the intestate as his own; that none of the property of the estate was ever disposed of by Mrs. Green or Mrs. Harp, and they never attempted to dispose of it, for the reason that they knew that under the agreement made by the plaintiff with the deceased they did not have any right to said property, except that Mrs. Green had the right to use it as long as she lived. "Your petitioner shows further that the said W. J. Waller had numerous relatives, . . but that he preferred and insisted upon petitioner coming and living with him in preference to any of the others, and at the request and solicitation of the said W. J. Waller both of his sisters, Mrs. M. J. Green and Mrs. Ella E. Harp both joined in the request that petitioner now come and live with his uncle and wait upon him during his last sickness, and in order to comfort and care for his uncle during his last illness he did come and enter into the contract above set forth and performed his part of same."

The defendant demurred on the grounds that the amendment set up a new and distinct cause of action, based on an alleged agreement with the intestate and Mrs. Green, or with Mrs. Green and Mrs. Harp; and that the amendment set out nothing which would relieve the bar of the statute of limitations. The court dismissed the action, holding that "whatever rights, if any, plaintiff may have had under the claimed agreement between him and defendant's intestate, have been forfeited by his long delay in attempting to assert and establish same." The plaintiff excepted to that judgment.

We are of the opinion that the learned trial judge erred in dismissing the action on the demurrer. According to the allegations of the petition, the plaintiff has a good cause of action if he establishes his allegations. The action is not barred by laches or the statute of limitations. It must be admitted, for the purposes of demurrer, that the plaintiff was induced by his uncle to remove from Arkansas and take up his residence with his uncle, upon the promise that he would provide for him by will by making him sole heir of his worldly possessions, subject only to a life-estate in his sister, Mrs. Green. If this promise was made and not fulfilled, it can be compelled by specific performance. *Maddox* v. *Rowe,* 23 *Ga.*

431 (68 Am. D. 535); *Lowe* v. *Bryant,* 30 *Ga.* 528 (76 Am. D. 673); *Spearman* v. *Wilson,* 44 *Ga.* 473 (3); *Napier* v. *Trimmier,* 56 *Ga.* 300; *Studer* v. *Seyer,* 69 *Ga.* 125; *Bird* v. *Trapnell,* 147 *Ga.* 50 (92 S. E. 872), s. c. 149 *Ga.* 767 (102 S. E. 131). Many other cases could be cited. However, by the very terms of the oral contract the plaintiff would not be entitled to the possession or proceeds until the death of Mrs. Green. This did not occur until June 15, 1932. Therefore a demand for specific performance would not have been ripe until that time. In the meantime, as appears from the petition, the only two heirs of W. J. Waller were Mrs. Green and Mrs. Harp. It can not be inferred that they were not aware of their relationship. In these circumstances a jury would be authorized to find that both of them waived their rights in favor of the plaintiff, and recognized the existence of the contract made by Waller. Mrs. Green enjoyed the life-estate bespoken in her favor by the deceased, her brother; and Mrs. Harp, who but for her recognition of the contract would have been entitled to a division of the estate between Mrs. Green and herself, can well be said, in accordance with the allegations of the petition, to have waived her rights of inheritance. There being no debts, and therefore no rights of creditors being affected, the plaintiff is entitled to the decree which he asks, if he establishes the allegations of his petition. *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773); *Chamblee* v. *Wayman,* 167 *Ga.* 821 (146 S. E. 851). In both of the cases just cited the promises of benefits were based upon the adoption of children, but the principles announced are equally applicable to benefits to be anticipated from a devise by will in return for services, as in this case. The facts distinguish this case from *Banks* v. *Howard,* 117 *Ga.* 94 (43 S. E. 438), and similar decisions holding that in an action for enforcement of specific performance of a contract to devise property by will, in compensation for services rendered, the statute of limitations begins to run against such cause of action from the time of the death of the intestate. In the case at bar, according to the allegations of the petition, the plaintiff fully complied with his promise to care for the promisor during his lifetime, and the binding force of the promise would not be altered because the life of the promisor was terminated within a short time. It was not an undertaking on the part of the plaintiff to prolong the life of the promisor. Had the

promisor adhered to the contract, the possession of the plaintiff would have been postponed until the death of Mrs. Green. According to the allegations of the petition as amended, the plaintiff gave to Mrs. Green, during her life after the death of W. J. Waller, that care and attention that the deceased had undertaken to provide for her. According to his allegations, the plaintiff has a perfect equity, and he only asks that this equity be transmuted by decree into perfect title. Until there has been a trial, the real facts will not be disclosed; but if the allegations of the petition are established by evidence, the petitioner will be entitled to a judgment decreeing him perfect title.

*Judgment reversed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*