A07A0525, A07A0526. WASTE MANAGEMENT OF METRO ATLANTA, INC. v. APPALACHIAN WASTE SYSTEMS, LLC et al.; and vice versa.

(649 SE2d 578)

BARNES, Chief Judge.

In Case No. A07A0525, Waste Management of Metro Atlanta, Inc. ("Waste Management") challenges the grant of summary judgment to Appalachian Waste Systems, LLC et al. ("Appalachian Systems"), on whether the Disposal Agreement between the parties was enforceable, and in Case No. A07A0526, Appalachian Systems appeals the denial of its motion to dismiss Waste Management's appeal. Waste Management contends the trial court erred by granting summary judgment to Appalachian Systems because it misapplied the principles of contract interpretation in Georgia and failed to follow this court's earlier opinion in this dispute, and also by denying Waste Management's motion for summary judgment. Finding no error, we affirm the trial court's judgment in Case No. A07A0525, and because of that ruling, dismiss the appeal in Case No. A07A0526.

In Georgia, "[i]t is the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Ga. Magnetic Imaging v. Greene County Hosp. Auth.*, 219 Ga. App. 502, 504 (1) (466 SE2d 41) (1995). Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995).

*Case No. A07A0525*

1. This is the second appearance of this case before this court. In the earlier case, *RTS Landfill v. Appalachian Waste Systems*, 267 Ga. App. 56 (598 SE2d 798) (2004), we recited the following summary:

Pursuant to an asset purchase agreement executed on December 31, 1996, RTS Landfill, Inc.[1] ("RTS"), formerly known as Sanifill of Georgia, Inc. ("Sanifill"), sold one of its operating divisions, Starr Sanitation ("Starr"), a solid waste collection, hauling, recycling, and transfer station business, to Appalachian Waste Systems, LLC ("Appalachian"), a company wholly owned and formed by Gerald S. Proctor and Sheryl D. Proctor, who were then employed by RTS's parent company, to complete the acquisition. The asset purchase agreement granted RTS a preemptive right of first refusal. In addition, the parties executed a separate Disposal Agreement. This appeal concerns the enforceability of those provisions. Specifically, RTS appeals from a series of orders declaring the provisions unenforceable and granting injunctive relief to Appalachian. For the reasons set forth below, we affirm the ruling that the preemptive right was unenforceable, but reverse the grant of declaratory relief to Appalachian with regard to the Disposal Agreement.

Id. at 56. On the issue of the Disposal Agreement we stated that:

RTS additionally maintains that the trial court erred in ruling that the Disposal Agreement was void because it lacked a territorial limit. In this regard, Section 1 of the Agreement requires Appalachian to deliver all of its qualifying waste to the Pine Bluff Landfill. Proctor explained the significance of this restriction at the hearing, testifying that it required Appalachian to haul to the Pine Bluff Landfill waste that it picked up from any locale. He further testified that this restriction impeded Appalachian's ability to expand into other markets, because the transportation cost of hauling waste from further territories to Pine Bluff would be prohibitive.

The trial court characterized this restriction as an "exclusive dealing" provision and found it void as an unreasonable restraint of trade. We have not previously addressed the type of agreement at issue in this case. However, "Georgia law provides substantial protection and latitude to covenants ancillary to the sale of a business because the covenants are a significant part of the consideration for the purchase of the business." A restrictive covenant executed

---

[1] Waste Management of Metro Atlanta, Inc., is the successor to RTS Landfill, Inc.

ancillary to the sale of a business will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public.

In this case, the trial court's order granting expedited declaratory relief does not reflect application of the correct standard. Accordingly, we reverse the grant of declaratory relief to Appalachian, and remand for the trial court to review the Disposal Agreement using the degree of scrutiny appropriate for the sale of a business. In resolving this question of law, the trial court shall provide the parties with notice and the opportunity for a hearing in accordance with OCGA § 9-11-56 (c).

(Punctuation and footnotes omitted.) Id. at 63-64 (4).

Upon remand, the trial court again found that the Disposal Agreement was unenforceable because it lacked a territorial restriction, and granted summary judgment to Appalachian Systems. The trial court found that even under the liberal standards applicable to sales of businesses this agreement was defective because the agreement contained no territorial limits, and while "blue penciling" is authorized under the sale of business standard, "blue penciling" cannot be used to supply a territorial limit when the parties did not include one.

Although acknowledging that following the remand the trial court again found the contract was unenforceably overbroad, Waste Management contends that in reaching this conclusion the trial court did not follow the terms of our remand. Waste Management asserts that instead the trial court misapplied the well-established principle that contemporaneously executed agreements between the parties may be construed together to supply missing elements of the agreement. Thus, Waste Management contends the trial court erred by not finding that the Asset Purchase Agreement supplied the missing territorial limitation.

Before addressing the merits of the appeal, we must note that although Waste Management's original notice of appeal provided that the clerk would "omit nothing from the record on appeal, and also transmit transcripts of evidence and proceedings as part of the record," it later filed an amended notice of appeal designating that only certain listed pleadings, orders of the trial court, and the transcript of the hearing conducted on February 16, 2006 would be included in the record on appeal, "[a]ll other items contained in the record **shall not be copied and shall be omitted** from the record

on appeal." (Emphasis in the original.) The record shows that the hearing, which was conducted on February 16, 2006, was the argument on the parties' motions for summary judgment. None of the evidentiary hearings that the trial court conducted earlier were included in the record on appeal.

It is well established that

> [t]he party asserting error on appeal has the burden to show it affirmatively by the record. The appellant has a duty to provide the appellate court with a transcript where an appeal is taken which draws in question the transcript of the evidence and proceedings. This court is a court for the correction of errors and its decision must be made on the record sent to this court by the clerk of the court below and not upon the briefs of counsel. An appeal in which a consideration of the enumeration of errors is dependent upon a consideration of the evidence heard by the trial court will be affirmed if a transcript is not included as a part of the appellate record.

(Citations and punctuation omitted.) *Woodard v. Doty*, 236 Ga. App. 242 (511 SE2d 602) (1999). Therefore, as the order of the trial court states that its decision was based upon "consideration of the evidence, citations of authority, and the entire record," any of the factual determinations made by the trial court which are based upon matters contained in those portions of the record below which were not made a part of the record on appeal must be affirmed. Id.

Contrary to Waste Management's contentions, the trial court did not ignore the directions of this court. The record shows that the trial court employed the standards for the sale of a business, but found that even applying those standards and reading the Asset Purchase and Disposal Agreements together, the agreement still lacked the essential territorial restriction term.

The trial court also found that the Asset Purchase Agreement could not be read to supply the missing territorial limits because the Asset Purchase Agreement did not state that the "Operating Territory" specified in that Asset Purchase Agreement was intended to be the territorial restriction in the Disposal Agreement.

The Operating Territory is set out in the preamble to the Asset Purchase Agreement and states in its entirety:

> WHEREAS, Seller currently owns and operates a solid waste collection, hauling, recycling and transfer station business in and around Fannin, Gilmer, Towns, Pickens, and Union Counties in Georgia; Graham, Clay, and Cherokee

Counties in North Carolina, and Polk County in Tennessee (all of which counties are collectively referred to as the "Operating Territory"), as a separate operating division under the registered fictitious name of Starr Sanitation (the "Business").

The Operating Territory is mentioned in one other portion of the preamble as follows: "WHEREAS, USA Waste Services, Inc., Seller's parent corporation, and Proctor shall mutually terminate Proctor's employment agreement and exclude the Operating Territory from Proctor's noncompete area as is defined in the existing written employment agreement." The term "Operating Territory" is not used again in the Asset Purchase Agreement, and nothing in the agreement, expressly or by implication, extends the use of the Operating Territory to the Disposal Agreement.

The Purchaser's Covenant Not to Compete, which was executed in conjunction with the Asset Purchase Agreement, contains an identical "Operating Territory" provision. The "Noncompete Area" specified in this agreement, however, is not the same as the "Operating Territory." Instead, the Noncompete Area is defined as "the combined area within a seventy-five (75) mile radius of the Seller's principal place of business in Smyrna, Georgia," and the Noncompete Agreement prohibits Appalachian Systems from conducting specified business within the Noncompete Area. This Noncompete Agreement contains no other mention of the term "Operating Territory."

The Disposal Agreement itself does not mention the term "Operating Territory." In fact, the Disposal Agreement contains no provision setting forth any limitation concerning the area in which it is to operate.

The trial court found that the Disposal Agreement required Appalachian Systems to deliver

all nonhazardous solid waste under [their] control and custody to [Waste Management's] landfill. [Appalachian Systems] would have to deliver waste they picked up from any locale to [Waste Management's] landfill. Under the disposal agreement, [Appalachian Systems is] not permitted to deliver any nonhazardous solid waste to any other facility.

Thus, the question before us becomes whether the trial court applied the standards correctly. In *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*, 253 Ga. App. 681, 687 (2) (560 SE2d 268) (2002), this court held that "[b]lue penciling cannot cure the problem, for 'the "blue pencil" marks, but it does not write. It may limit an area, thus making it reasonable, but it may not rewrite a contract void for

vagueness, making it definite by designating a new, clearly demarcated area.' " (Footnote omitted.) As our Supreme Court explained:

> A trial court may apply the "blue pencil" method where a covenant not to compete ancillary to a contract for the sale of a business designates an area greater than reasonably necessary to protect the purchaser. In such circumstances the court may enjoin the seller "from competing in only so much of that area as it finds from clear and convincing evidence is essential to protect the buyer." *Jenkins v. Jenkins Irrigation, Inc.*, 244 Ga. 95, 101 (259 SE2d 47) (1979). However, we hold that a trial court may not under the guise of the "blue pencil" method *reform* a contract which is otherwise unenforceable by reason of vagueness.

*Hamrick v. Kelley*, 260 Ga. 307, 307-308 (392 SE2d 518) (1990).

Here, contrary to Waste Management's arguments, nothing indicates that the parties intended the Operating Territory specified in the Asset Purchase Agreement to be used as a territorial limit for the Disposal Agreement. The Disposal Agreement contains no territorial limit whatsoever, and merely requires that "*all* nonhazardous solid waste under [Appalachian Systems's] control and custody" must be delivered to Waste Management's landfill. (Emphasis supplied.) Because "[a]ll means all, every single one," *Gordon v. Atlanta Cas. Co.*, 279 Ga. 148, 149 (611 SE2d 24) (2005), we can only conclude that the agreement as written was intended to apply to all nonhazardous solid waste under Appalachian Systems's control and custody without regard to the area in which it was collected and to require Appalachian Systems to deliver all such waste to Waste Management's landfill. Additionally, the agreements between the parties that does describe an area, the Purchaser's Covenant Not to Compete, does not use the Operating Territory as the territory, but defines another area completely. Even reading the Asset Purchase Agreement and the Disposal Agreement together does not achieve the result Waste Management would like us to reach. An agreement which requires Appalachian Systems to deliver any solid waste in its possession to Waste Management's landfill without regard to territorial limitation is unreasonable.

Accordingly, we find that the trial court correctly concluded that it could not add a term missing in the contract, even under the liberal treatment afforded covenants ancillary to the sale of a business. Thus, the trial court did not err by granting summary judgment to Appalachian Systems and by denying summary judgment to Waste Management.

*Case No. A07A0526*

2. The appeal of the denial of Appalachian Systems's motion to dismiss the appeal on the grounds that Waste Management had not timely paid the bill of costs and that its out-of-time amendment to the notice of appeal was a nullity is moot because of our disposition of Case No. A07A0525, and therefore this appeal is dismissed.

*Judgment affirmed in Case No. A07A0525 and appeal dismissed as moot in Case No. A07A0526. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 10, 2007.

*McKenna, Long & Aldridge, Spencer F. Preis, George Darden, Barry J. Armstrong*, for appellant.

*Clark & Clark, Herman Clark, Gambrell & Stolz, Robert G. Brazier, Seaton D. Purdom, Steven R. Press*, for appellees.